**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CHRISTIE MULLIN,

Plaintiff, Civil Action No. 1:26-cv-_________

v. **JURY TRIAL DEMANDED**

ASSOCIATED NEWSPAPERS LIMITED,
Northcliffe House, 9 Derry Street, London W8 5HY;
MAIL MEDIA, INC. (d/b/a DailyMail.com and MailOnline),
51 Astor Place, New York, New York 10003;
and ELINA SHIRAZI, 4018 Chancery Ct NW Washington, DC 20007,

Defendants.
_____________________________________________/

**COMPLAINT FOR DEFAMATION (LIBEL PER SE)**
**AND FALSE LIGHT INVASION OF PRIVACY**

Plaintiff Christie Mullin, by and through undersigned counsel, brings this action for defamation (libel per se) and false light invasion of privacy against Defendants Associated Newspapers Limited, Mail Media, Inc., and Elina Shirazi, and alleges as follows:

## I. NATURE OF THE ACTION

1. This is a defamation action arising from the May 27, 2026 publication by Defendants of a false and defamatory article titled "Trump's DHS chief rocked by wild rumor about his WIFE... as furious staff leak scandalous details about his life of luxury" (the **"Article"**), authored by Defendant Elina Shirazi and published by the Daily Mail and on MailOnline.com. A screen capture of the Article as Defendants published and displayed it on the Daily Mail's website, showing the Article's headline, byline, and opening paragraphs and the photograph of Plaintiff and her family that Defendants published in the Article, is reproduced below as Figure 1.

## m+ EXCLUSIVE Trump's DHS chief rocked by wild rumor about his WIFE... as furious staff leak scandalous details about his life of luxury

- **Politics is fast. We're faster. Sign up to the DC Insider newsletter for a front-row seat to Washington... and unlock 3 FREE months of DailyMail+ HERE**

By ELINA SHIRAZI, US SENIOR POLITICAL REPORTER
Published: 09:18 EDT, 27 May 2026 | Updated: 11:07 EDT, 2 July 2026

47 shares 245

e-mail View comments

Department of Homeland Security leader Markwayne Mullin is desperately trying to get his wife, Christie Mullin, hired onto DHS's payroll, four insiders have told the Daily Mail.

Mullin, 48, is accused of trying to obtain government employee status for his wife, 47, so that he does not have to pay for her airline ticket when she flies, according to sources familiar with DHS and ICE.

The secretary frequently travels on his $70 million government jet to fly home to his family in **Oklahoma**, often leaving on Thursday mornings and not returning until the following Monday afternoon, multiple DHS insiders said.

Mullin even flew from a **Washington, DC**, airport just hours after the attempt on President **Donald Trump**'s life at the Correspondents' Dinner in April, despite heightened security concerns.

'Mullin seems to think DHS requires less work than a senator, and it shows. Meanwhile, ICE has no direction,' one source told the Daily Mail.

Three people with direct knowledge also revealed that Mullin is reportedly inquiring about a Special Government Employee (SGE) designation, or contracting role, for his spouse.

As an SGE, his wife could work for the federal government as a temporary employee, advisor, or consultant, serving up to 130 days a year.

The role would be hourly, according to people familiar with the role, around $65 to $70 an hour.




Mullin's family reportedly lives on a ranch in Oklahoma. The couple have six children who all live back home. The eldest is [redacted], and the others are named [redacted] and [redacted]

Figure 1. True and correct screen capture of the Article as published and displayed on the Daily Mail's website, showing the Article's headline, byline (reading "Published: 09:18 EDT, <u>27 May 2026</u> | Updated: 11:07 EDT, <u>2 July 2026</u>"), and opening paragraphs, and the photograph of Plaintiff and her family that Defendants published in the Article, with the Article's accompanying caption. The names of Plaintiff's children, which appear in that caption as published, are redacted. *See* Fed. R. Civ. P. 5.2(a)(3).

2. The Article makes a series of specific, verifiably false statements of fact concerning Plaintiff Christie Mullin, a private citizen and uncompensated volunteer in the rural-policy program at the America First Policy Institute, and the spouse of Markwayne Mullin, the United States Secretary of Homeland Security (the **"Secretary"**). The Article falsely alleges that the Secretary is "desperately" trying to install Plaintiff on the DHS payroll under a Special Government Employee designation to avoid paying for her commercial airline tickets, and it casts Plaintiff as the willing beneficiary of a scheme to misuse federal aviation resources for personal gain.

3. Plaintiff is placed at the center of this fabricated narrative by name, age, photograph, and family details, as the passive intended beneficiary of her husband's alleged corrupt scheme. She has never sought, considered, applied for, or been offered any DHS position, and she has played no role in any such scheme. No such scheme exists.

4. The Article did not merely report a rumor about a Cabinet officer. It published Plaintiff's name and photograph beneath a headline that set the word "WIFE" in all capital letters to make Plaintiff appear scandalous, and it named and pictured the Mullins' minor children. The consequences for Plaintiff have been immediate and severe. Her children have been humiliated and are now embarrassed to attend school, and one of the Mullins' sixteen-year-old daughters was told by a fellow student at school, "you should just go kill yourself." Plaintiff has suffered profound emotional distress as a mother watching her children be punished in public for a story their parents repeatedly told the press was false.

5. The exposure of the Mullins' minor children produced exactly the public humiliation that naming and photographing them invited. In the comment thread published beneath the Article, readers openly ridiculed the children's appearance, describing them as an

"odd looking family" (commenter "**LegalAcaiRange**"), writing "Not a looker in the bunch" (commenter "**h8dallas420**"), mocking the children pictured as "ANDY, Barny, and Goober in the back row" (commenter "**PupilLegumeFile**"), and jeering "Bless those little spray tanned knees" (commenter "**l a l a**"). This public mockery of identifiable minor children was the direct and foreseeable consequence of Defendants' decision to name and photograph them in connection with an alleged scandal concerning their father.

6. This is not a case of a publisher that failed to investigate. Before publication, Defendants asked the Secretary and his staff about the rumor and were told, without qualification, that it was false. Another national news organization independently pursued the same story, received the same denial, and declined to publish it. Defendants investigated, were told the story was false by the people in the best position to know, watched a responsible competitor stand down, and chose to publish a private citizen's name and photograph, and her children's, anyway.

7. Each defamatory statement of fact in the Article is false. Plaintiff pleads negligence as the fault a private-citizen defamation claim requires. Defendants published each defamatory statement without exercising the care that a reasonable publisher would have exercised under the circumstances. In the alternative, and without conceding her status, Plaintiff pleads actual malice: Defendants published the defamatory statements with knowledge that they were false or with reckless disregard of whether they were false, having entertained serious doubts as to their truth.

8. Plaintiff seeks compensatory, special, and punitive damages together with prejudgment and post-judgment interest, costs, and such other relief as the Court deems just. Plaintiff demands a trial by jury.

## II. JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(3). The amount in controversy exceeds $75,000.00, exclusive of interest and costs. Plaintiff is a citizen of Oklahoma. Defendant Elina Shirazi is, on information and belief, a citizen of the District of Columbia, which is a State for purposes of 28 U.S.C. § 1332 under § 1332(e). Defendant Mail Media, Inc. is incorporated under the laws of Delaware with its principal place of business in New York, New York, and is therefore a citizen of Delaware and New York under § 1332(c)(1). Defendant Associated Newspapers Limited is organized under the laws of England and Wales with its principal place of business in London, United Kingdom, and is a citizen or subject of a foreign state. No Defendant is a citizen of Oklahoma.

10. This Court has personal jurisdiction over each Defendant under Fed. R. Civ. P. 4(k)(1)(A) and D.C. Code § 13-423(a)(1), (3), and (4), and the exercise of jurisdiction comports with due process. The District of Columbia is the focal point of the Article and of the harm it caused. Defendants expressly aimed the Article at the District of Columbia. The Article's subject is the conduct of the United States Secretary of Homeland Security and the staffing and aviation operations of the Department of Homeland Security, a federal department headquartered in the District of Columbia, and the Article is attributed to sources described as "furious staff" and persons "familiar with DHS and ICE," that is, sources within the District-based federal departments whose internal affairs the Article purports to report.

11. Defendants further purposefully directed the Article into the District of Columbia. Defendants Mail Media, Inc. and Associated Newspapers Limited publish and distribute dailymail.com and mailonline.com to a substantial readership in the District of Columbia, derive substantial advertising and related revenue from that District readership, and engage in a

persistent course of conduct directed at the District within the meaning of D.C. Code § 13-423(a)(4). The reputational harm to Plaintiff has been felt in the District of Columbia, including within the policy and charitable community connected to her uncompensated volunteer service and among the audience to which the Article was directed.

12. Defendant Shirazi's conduct in the District further supports personal jurisdiction here. Defendant Elina Shirazi is, on information and belief, the Daily Mail's and Mail Media's White House and Department of Homeland Security correspondent, whose regular beat is the coverage of the White House, the Department of Homeland Security, and other federal agencies and officials in the District of Columbia. On information and belief, Ms. Shirazi resides and maintains her professional base in the District of Columbia, regularly attends and reports from White House and federal press briefings and events in the District, covers the Department of Homeland Security and its Secretary, and has traveled with the administration in the course of her reporting, including aboard Air Force One. Through Ms. Shirazi and its District of Columbia news bureau, Defendant Mail Media, Inc. has purposefully availed itself of the District of Columbia market and purposefully directs its reporting and publication at District-based federal officials and a District audience. The Article, a report about the Secretary of Homeland Security written by Defendants' own correspondent whose regular beat is the very department that is its subject, arises directly from those District of Columbia contacts. Because Defendant Shirazi acted within the course and scope of her employment and agency, as alleged in paragraph 18, her acts in the District of Columbia in reporting, writing, and publishing the Article are attributable to ANL and Mail Media.

13. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred here. On information and

belief, Defendant Shirazi reported and wrote the Article from her professional base in the District of Columbia, as alleged in paragraphs 12 and 18. The Article's subject is the operations of a federal department seated in the District, its claimed sources are within that department, it was published, distributed, and read in the District, and Plaintiff suffered reputational injury here. Venue is also proper under 28 U.S.C. § 1391(b)(1) and (c). Defendant Shirazi resides in this District under § 1391(c)(1), as alleged in paragraph 18. Defendant Mail Media, Inc. resides in this District under § 1391(c)(2) because it is subject to personal jurisdiction here with respect to this action, as alleged in paragraphs 10 through 12. Defendant Associated Newspapers Limited is not resident in the United States, may be sued in any judicial district, and its joinder is disregarded in determining venue as to the other Defendants under § 1391(c)(3).

## III. PARTIES

14. Plaintiff Christie Mullin is a private citizen and a domiciliary of Oklahoma. She is the spouse of United States Secretary of Homeland Security Markwayne Mullin. She is a stay-at-home mother to the Mullins' six children, three of whom she and the Secretary adopted. She serves as an uncompensated volunteer in the rural-policy program at the America First Policy Institute. She is not an employee, contractor, fellow, or paid consultant of AFPI, and she receives no compensation from AFPI. She is not a federal employee, contractor, or public official, and she holds no position with the Department of Homeland Security or any other federal agency.

15. Plaintiff has previously been offered, and has declined, public-company and nonprofit board appointments paying compensation many multiples of any spousal-travel reimbursement amount, because she has chosen to remain at home and raise her family. The notion advanced by the Article, that she would agree to a federal designation requiring federal-

ethics encumbrances and public scrutiny for an amount of money she has already turned down in vastly greater multiples for less work, is contradicted by her documented choices.

16. Defendant Associated Newspapers Limited (**"ANL"**) is a corporation organized under the laws of England and Wales, with its registered office and principal place of business at Northcliffe House, 9 Derry Street, London W8 5HY, United Kingdom.

17. Defendant Mail Media, Inc. (**"Mail Media"**) is the United States publisher of DailyMail.com and MailOnline. It is a corporation incorporated under the laws of Delaware and registered to do business in New York, with its principal executive office and U.S. newsroom at 51 Astor Place, New York, New York 10003. Its registered agent for service of process is Corporation Service Company, 80 State Street, Albany, New York 12207-2543.

18. Defendant Elina Shirazi is a journalist employed by ANL and/or Mail Media who authored the Article. On information and belief, she is the Daily Mail's and Mail Media's White House and Department of Homeland Security correspondent, whose regular beat is the White House, the Department of Homeland Security, and federal agencies in the District of Columbia. On information and belief, she maintains her professional base in the District of Columbia, regularly attends and reports from White House and federal briefings and events there, covers the Department of Homeland Security and its Secretary, and has traveled with the administration in the course of her reporting, including aboard Air Force One. On information and belief, Ms. Shirazi resides at 4018 Chancery Court NW, Washington, D.C. 20007, and is a citizen of the District of Columbia. At all relevant times, Defendant Shirazi acted within the course and scope of her employment and agency with ANL and Mail Media, including in reporting and writing the Article and, on information and belief, in publishing the X Post to promote it on Defendants' behalf, and ANL and Mail Media are liable for her conduct.

## IV. PLAINTIFF'S STATUS AS A PRIVATE CITIZEN

19. Plaintiff Christie Mullin is not a public official, holds no governmental office, and is not a public figure. She has not thrust herself into the vortex of any controversy over DHS staffing or aviation policy. She has no public-facing role of any kind bearing on DHS, immigration policy, or federal aviation policy. Her volunteer involvement with the rural-policy program at the America First Policy Institute is uncompensated charitable service unrelated to the subject matter of the Article. She is, in every relevant sense, a private citizen.

20. The Article's deliberate targeting of Plaintiff, a private wife and mother who has never sought or held public office and who has not injected herself into the controversy the Article manufactures, is an act of harassment. The Article carried the principal headline "Trump's DHS chief rocked by wild rumor about his WIFE," with the word "WIFE" rendered in all capital letters for emphasis. The capitalization was a calculated editorial decision to embarrass and sexualize a private woman who is the spouse of a Cabinet Secretary, and to draw clicks at the expense of Plaintiff's dignity. The spouse and children of a senior public official are not fair game for tabloid character assassination merely by virtue of the familial relationship.

21. Accordingly, Plaintiff pleads negligence as the fault a private-citizen defamation claim requires. In the alternative, and without conceding her status, Plaintiff pleads that Defendants acted with actual malice, in that Defendants published the statements concerning Plaintiff with knowledge of their falsity or with reckless disregard of whether they were false.

## V. THE DEFAMATORY ARTICLE AND ITS REPUBLICATIONS

22. On <u>May 27, 2026</u>, Defendants published the Article on dailymail.co.uk, dailymail.com, and mailonline.com. The Article was prominently featured on the Daily Mail's

home page, was promoted across the Daily Mail's social-media properties, and was syndicated to and republished by other outlets.

23. On the same day, at 2:34 p.m. Eastern time, Defendants published a second, separately addressed version of the Article under the headline "Report: Trump's DHS chief rocked by rumor about his wife," in the Daily Mail's image-led "vertical gallery" format designed for mobile and social-media readers (the "**Gallery Republication**"). The Gallery Republication bears the byline "By ELINA SHIRAZI, US SENIOR POLITICAL REPORTER" and the notation "Published: 14:34 EDT, 27 May 2026." It carries its own article identifier, article-15853325, and its own web address, both separate from the Article's, and is an independently actionable publication.

24. The Gallery Republication repeats the Article's accusations concerning Plaintiff word for word. It states that the Secretary "is desperately trying to get his wife, Christie Mullin, hired onto DHS's payroll," that he is "trying to obtain government employee status for his wife, 47, so that he does not have to pay for her airline ticket when she flies," that he "is reportedly inquiring about a Special Government Employee (SGE) designation, or contracting role, for his spouse," and that he "pitches the idea on the regular." Directly beneath those statements, the Gallery Republication displays a photograph of Plaintiff standing beside the Secretary, under the caption "Insiders tell the Daily Mail that Department of Homeland Security leader Markwayne Mullin is desperately trying to get his wife, Christie Mullin, hired onto DHS's payroll." Like the Article, the Gallery Republication also identifies each of the Mullins' six children by name. A screen capture of the Gallery Republication as Defendants published and displayed it is reproduced below as Figure 2.

**Report: Trump's DHS chief rocked by rumor about his wife**

By ELINA SHIRAZI, US SENIOR POLITICAL REPORTER
PUBLISHED: 14:34 EDT, 27 May 2026 | UPDATED: 14:34 EDT, 27 May 2026

Share | Add us as a preferred source | comment

Department of Homeland Security leader Markwayne Mullin is desperately trying to get his wife, Christie Mullin, hired onto DHS's payroll, four insiders have told the Daily Mail.

Mullin, 48, is accused of trying to obtain government employee status for his wife, 47, so that he does not have to pay for her airline ticket when she flies, according to sources familiar with DHS and ICE.

The secretary frequently travels on his $70 million government jet to fly home to his family in **Oklahoma**, often leaving on Thursday mornings and not returning until the following Monday afternoon, multiple DHS insiders said.

Mullin even flew from a **Washington, DC**, airport just hours after the attempt on President **Donald Trump**'s life at the **White House** Correspondents' Dinner in April, despite heightened security concerns.

'Mullin seems to think DHS requires less work than a senator, and it shows. Meanwhile, ICE has no direction,' one source told the Daily Mail.

Three people with direct knowledge also revealed that Mullin is reportedly inquiring about a Special Government Employee (SGE) designation, or contracting role, for his spouse.

As an SGE, his wife could work for the federal government as a temporary employee, advisor, or consultant, serving up to 130 days a year.

The role would be hourly, according to people familiar with the role, around $65 to $70 an hour.




**Insiders tell the Daily Mail that Department of Homeland Security leader Markwayne Mullin is desperately trying to get his wife, Christie Mullin, hired onto DHS's payroll.**

Figure 2. True and correct screen capture of the Gallery Republication as published and displayed on the Daily Mail's website at www.dailymail.com/vertical-galleries/article-15853325/Report-Trumps-DHS-chief-rocked-rumor-wife.html, captured on October 10, 2026, showing the headline, the byline (reading "Published: 14:34 EDT, 27 May 2026 | Updated: 14:34 EDT, 27 May 2026"), the opening paragraphs, and the photograph of Plaintiff with its caption. An embedded video player that appears on the page between the third and fourth paragraphs, and that plays unrelated, rotating video content, is omitted.

25. Defendants also distributed the Gallery Republication through Microsoft's MSN news service, which published it in its United States edition beginning at 2:34 p.m. Eastern time

on May 27, 2026, and in other national editions, under the same headline. The MSN listing credits Defendant Shirazi as the author and identifies the provider as the Daily Mail, whose legal name it gives as Associated Newspapers Limited. Within hours, readers were sharing the MSN version of the Gallery Republication on X under its headline.

26. Defendant Shirazi personally promoted the Article on the social-media platform X. At 10:39 a.m. Eastern time on May 27, 2026, about eighty minutes after the Article first appeared, Defendant Shirazi published the following post from her X account, @elinashirazi (the "**X Post**"):

> "EXCLUSIVE: Markwayne Mullin is inquiring about a Special Government Employee (SGE) designation for his wife at Homeland Security. It's the same status Kristi Noem used for Corey Lewandowski. @DailyMail @Daily_MailUS
>
> PLUS, we reveal his jet-set escapes - including one very important night.
>
> READ HERE: https://t.co/jLTCJQMDSQ"

27. The link in the X Post leads to the Article. The X Post stated, as fact and without any qualifying reference to a "rumor," that the Secretary "is inquiring about a Special Government Employee (SGE) designation for his wife at Homeland Security," and compared that supposed inquiry to the arrangement a prior Secretary had used for a political aide. As its preview image, the X Post displayed the Article's photograph of Plaintiff with the Secretary and the Mullins' minor children, together with a second photograph of Plaintiff with the Secretary, above the Article's headline. A screen capture of the X Post is reproduced below as Figure 3.




Figure 3. True and correct screen capture of the X Post, posted by Defendant Shirazi from the X account @elinashirazi at 10:39 a.m. Eastern time on May 27, 2026, at https://x.com/elinashirazi/status/2059645755913015534, as displayed by X's embedded-post viewer and captured on October 10, 2026. The viewer truncates the post's text where it reads "Show more"; the full text is quoted in paragraph 26.

28. Through the X Post, Defendant Shirazi republished the substance of the SGE accusation, pleaded below as False Statement No. 2, to her own audience and directed that audience to the Article. As of October 10, 2026, X reported that the X Post had been viewed 433,439 times and reposted 1,024 times. Defendant Shirazi's own promotion of the Article thus asserted the SGE recruitment as an established fact, the very characterization the Article's headline purported to disclaim by calling it a "rumor."

29. Readers who replied directly to the X Post understood it as Defendant Shirazi presented it: as a report that the Secretary was seeking a federal position for Plaintiff, and that Plaintiff stood to benefit from that position because of her marriage rather than any qualification of her own. Within three hours of the X Post, at 12:36 p.m. Eastern time on May 27, 2026, the X account "A Raging Bill" (@ARagingBill) replied: "WTF is wrong with these DC people? Can't they just do their freaking jobs and separate their personal interests from their work. If true, how disappointing." At 1:12 p.m. Eastern time the same day, the X account "Sarah Adams" (@sarahadams) replied: "This stuff is so foolish." At 1:31 p.m. Eastern time the same day, the X account "Terra" (@Iget2bme72) replied: "Nepotism or DEI? Oh right…when it's MAGA, they call it 'qualified because I married him.'" As of October 10, 2026, X reported that these three replies had themselves been viewed a combined 9,593 times. Screen captures of the three replies are reproduced below as Figure 4.




Figure 4. True and correct screen captures of three replies to the X Post, posted on May 27, 2026, by the X accounts @ARagingBill (12:36 p.m. Eastern time), @sarahadams (1:12 p.m. Eastern time), and @Iget2bme72 (1:31 p.m. Eastern time), each displayed beneath the X Post at https://x.com/elinashirazi/status/2059645755913015534 and captured on October 10, 2026. Each capture is cropped to the reply itself; the X Post to which each responds is reproduced in Figure 3.

30. Plaintiff pleads these replies, and the reader comments pleaded elsewhere in this Complaint, as evidence of how ordinary readers understood the X Post and the Article to which it linked, and of the reach of the accusation concerning Plaintiff. Plaintiff asserts no claim against the authors of the replies or comments.

31. The Article is attributed to anonymous sources identified only as "insiders" or "sources familiar with DHS and ICE." Defendants did not corroborate any source's account with

any documentary record, any on-the-record source, or any reasonable investigation of readily available public records.

32. The Article does not report on any judicial, legislative, or administrative proceeding, any government record or report, or any official action of a government body. Its accusations concerning Plaintiff rest solely on the anonymous sources described in paragraph 31. The only official statements the Article contains are the denials described in paragraph 66, which contradict the Article's accusations rather than support them. Defendant Shirazi's X Post likewise reports no official proceeding or record. No privilege to report on official proceedings or public records attaches to the Article's accusations concerning Plaintiff. To the extent any qualified privilege could otherwise apply, Defendants forfeited it by publishing with knowledge of falsity or reckless disregard of the truth, and in conscious disregard of Plaintiff's rights, as alleged in paragraphs 51 through 69.

## VI. THE FALSE AND DEFAMATORY STATEMENTS

33. The Article contains the following false statements of fact (each a **"False Statement"**). Each False Statement is reproduced from the Article in quotation marks. The Article's own byline discloses that Defendants revised the Article after initial publication, including on July 2, 2026, at 11:07 EDT, and again on September 17, 2026, at 12:33 EDT, without any correction, retraction, or editor's note; each version of the Article constitutes an actionable publication. Each is false. Each is defamatory per se as to Plaintiff Christie Mullin.

34. **False Statement No. 1 (SGE Recruitment).** The Article states that the Secretary "is desperately trying to get his wife, Christie Mullin, hired onto DHS's payroll," and that he is "trying to obtain government employee status for his wife, 47, so that he does not have to pay for her airline ticket when she flies." This is false. Plaintiff has not been offered, has not sought, has

not considered, and has not accepted any position at the Department of Homeland Security in any capacity. No such recruitment effort has occurred.

35. **False Statement No. 2 (SGE Pitches).** The Article states that the Secretary "pitches the idea on the regular," attributing that statement to a "source familiar with conversations about his wife," and reports that he "is reportedly inquiring about a Special Government Employee (SGE) designation, or contracting role, for his spouse." This is false. No such proposal has been made on any occasion, much less "on the regular."

36. **False Statement No. 3 (Spousal-Flight Cost-Avoidance Premise).** The Article's premise, that the Secretary would otherwise "have to pay for her airline ticket when she flies" and pursued SGE status for Mrs. Mullin to avoid that cost, is doctrinally and factually false, for the reasons set out in Section VII below.

37. **False Statement No. 4 (The Cost-Avoidance Motive).** The Article's economic premise is false for the additional and independent reason that Plaintiff and the Secretary own two private aircraft and have their own access to private air travel. Plaintiff has no need to obtain any federal designation in order to fly privately or to spare the family the cost of commercial tickets. The suggestion that Plaintiff would seek or accept a federal appointment, with its ethics encumbrances and public scrutiny, in order to fly privately is contradicted by the fact that she already can. The cost-avoidance motive the Article ascribes to Plaintiff and the Secretary is fabricated.

38. **False Statement No. 5 (Mrs. Mullin as Co-Participant).** By name, age, photograph, family details, and surrounding text, the Article portrays Plaintiff as the acquiescent intended beneficiary of an alleged scheme to misuse federal aviation resources. This is false.

Plaintiff has not sought, considered, applied for, or accepted any DHS position. She has not participated in any discussion with the Secretary, the Department, or any other federal entity about any DHS appointment. She has played no role in any aviation arrangement implicating any federal employee or federal-employee designation. The Article's central premise as to Plaintiff is fabricated.

39. Each False Statement is of and concerning Plaintiff. She is identified in the Article by name, by age, by photograph, and by family detail. The defamatory sting, that Plaintiff is complicit in and the willing beneficiary of a scheme to misuse public resources and defraud the public, attaches to Plaintiff directly and would be so understood by reasonable readers. The all-capital "WIFE" headline, together with the placement of Plaintiff's name and photograph at the center of the story, confirms that the Article is of and concerning Plaintiff herself, and not her husband alone.

40. **The Article's own headline establishes that it is of and concerning Plaintiff.** Defendants have asserted, in response to Plaintiff's pre-suit demand, that the Article was not of and concerning Plaintiff because it reported only on the Secretary's own inquiries. The Article's headline refutes that position. The headline, reproduced in Figure 1 above, announces that the Secretary was "rocked by wild rumor about his WIFE." A rumor about the Secretary's wife is, by Defendants' own description, a report about Plaintiff. The Gallery Republication's headline, reproduced in Figure 2, is to the same effect: "Trump's DHS chief rocked by rumor about his wife." Defendants reinforced that message with the Article's photographs. Defendants published a photograph of Plaintiff with her family, shown in Figure 1, and published a second photograph of Plaintiff under the caption "Insiders tell the Daily Mail that Department of Homeland Security leader Markwayne Mullin is desperately trying to get his wife, Christie Mullin, hired onto DHS's

payroll." Defendants cannot sell the Article to the public as a scandalous rumor about Plaintiff and then defend it in litigation as a story that was only ever about her husband.

41. **The "rumor" framing is irreconcilable with the Article's content.** A rumor is an unverified report that circulates independently of its subject. A man is not "rocked" by a rumor about his own conduct, and a man does not hear rumors of what he himself is doing. The Article does not, in fact, report a rumor. It asserts as fact that the Secretary "is desperately trying" to place Plaintiff on the DHS payroll and that he "pitches the idea on the regular." Deliberate, repeated conduct by a named official, described as ongoing and habitual, is not a rumor about that official; it is an accusation against him, and, by the headline's own terms, an accusation about his wife. Defendants employed the word "rumor" to assert a specific factual charge against Plaintiff and the Secretary while disclaiming responsibility for asserting it. The False Statements are assertions of fact, and the "rumor" label does not convert them into protected opinion, hearsay, or reportage.

42. Defendant Shirazi's own promotion of the Article confirms the point. In the X Post, reproduced in Figure 3, which she published on May 27, 2026, Defendant Shirazi did not describe a rumor. She stated flatly that the Secretary "is inquiring about a Special Government Employee (SGE) designation for his wife." Defendants knew they were publishing a factual accusation, labeled it a "rumor" in the headline to avoid accountability for it, and described it as fact everywhere else.

## VII. THE PRESIDENTIAL REQUIRED USE DETERMINATION FORECLOSES THE ARTICLE'S CENTRAL ECONOMIC PREMISE

43. By formal Memorandum dated March 3, 2004, from the Counsel to the President to the Secretary of Homeland Security, on the subject "Use of Government Aircraft by the

Secretary of Homeland Security" (the **"Required Use Memorandum"**), the President of the United States formally determined that travel by the Secretary of Homeland Security constitutes "required use travel" within the meaning of Office of Management and Budget Circular No. A-126 (revised May 22, 1992), para. 11.b(2), 57 Fed. Reg. 22150 (May 26, 1992).

44. The Required Use Memorandum is reinforced by statute and regulation, including 31 U.S.C. § 1344 and 41 C.F.R. §§ 301-10.260 through 301-10.264. The Secretary's government aircraft functions as a Sensitive Compartmented Information Facility, enabling secure classified-information processing and instantaneous secure communications. Commercial air travel cannot provide an equivalent secure-communications environment.

45. The Article's premise that the Secretary had a "choice" between government aircraft and commercial flights, and that he was attempting to install Mrs. Mullin as an SGE to shift the cost of her commercial travel onto the federal government, falsely supplies a choice that the President of the United States has determined the Secretary does not have, and a cost-avoidance motive that has no factual basis.

## VIII. PRE-PUBLICATION NOTICE, DENIAL, AND ANOTHER OUTLET'S DECISION NOT TO PUBLISH

46. Before publishing the Article, Defendants, acting through Defendant Shirazi, contacted the Secretary and members of his staff and asked them about the rumor that is the subject of the Article. The Secretary and his staff told Defendants, directly and without qualification, that the rumor was absolutely false.

47. Notwithstanding that categorical denial from the very official at the center of the story, Defendants published the Article. Defendants then went further than the rumor itself: they placed Plaintiff at the center of the story by name, age, and photograph, and they named and

pictured the Mullins' minor children, none of whom had any conceivable connection to DHS staffing or aviation policy.

48. A separate national news organization independently pursued the same story and contacted the Mullins about it. After being told that the story was false, that organization did not publish it. A responsible publisher, presented with the same denial that Defendants received, recognized that the story was not fit to print. Defendants, presented with that same denial, published it anyway.

49. At no time before publication did Defendants contact Plaintiff. Although the Article centers on Plaintiff by name and photograph and imputes to her complicity in a fraudulent scheme, Defendant Shirazi did not telephone, email, message, write to, or otherwise contact Plaintiff or her representatives for comment, confirmation, denial, or explanation.

## IX. EACH FALSE STATEMENT IS DEFAMATORY PER SE AND NOT PROTECTED OPINION

50. Each False Statement charges Plaintiff with moral and ethical impropriety, including conspiring with her husband to misuse public resources for personal benefit. That charge is libel per se. It is defamatory because it tends to injure Plaintiff in her community standing. The False Statements are assertions of fact, not protected opinion.

## X. ACTUAL MALICE (PLEADED IN THE ALTERNATIVE)

51. Defendants published each False Statement with actual malice. The following are discrete factual indicia of Defendants' subjective knowledge of falsity or reckless disregard for the truth.

52. **Publication Despite an Express Pre-Publication Denial.** Defendants asked the Secretary and his staff about the story and were told, without qualification, that it was false.

Publishing an accusation that the person in the best position to know has expressly denied, without any contrary verification, is powerful evidence of knowledge of falsity or reckless disregard for the truth.

53. **Disregard of a Responsible Competitor's Decision Not to Publish.** Another national news organization pursued the same story, received the same denial, and declined to publish. That a competing news organization in possession of the same information concluded the story should not run is further evidence that Defendants' decision to publish was reckless.

54. **Reliance on Anonymous Sources Without Corroboration.** Defendants relied on anonymous sources whose statements Defendants made no meaningful effort to corroborate.

55. **Sources of Known Bias.** The Article itself characterizes its sources as "furious staff," establishing on the face of the publication that the sources harbored partisan, personal, or institutional grudges that any responsible editor would have regarded as red flags.

56. **Failure to Consult Readily Available Public Records.** Each False Statement was contradicted by readily available public records that Defendants had every opportunity to consult before publication, including the Secretary's published schedule, FAA flight-tracking data, DHS aviation logs, OGE Form 278e financial disclosures, and the March 3, 2004 Required Use Memorandum and its statutory framework.

57. **Internal Inconsistencies.** The Article simultaneously alleges that the Secretary is "barely in the building" and that he personally pitches the SGE idea "on the regular" inside the building, an internal inconsistency that any responsible editor should have caught.

58. **The Self-Contradicting "Rumor" Label.** As set out in paragraphs 40 through 42, Defendants labeled as a "rumor" about the Secretary's wife a story whose content is a factual accusation of the Secretary's own repeated conduct, and Defendant Shirazi promoted that same

story on social media as established fact with no rumor qualification at all. A publisher that knows its accusation is an assertion of fact, and dresses it as a rumor in the headline alone, is a publisher seeking to publish an accusation while reserving a defense against it. That editorial choice evidences subjective awareness that Defendants were unwilling to stand behind the accusation as fact.

59. **Pattern of Similar Unverified Reporting.** Plaintiff does not rely on an undocumented history of other stories, complaints, or retractions. The pattern evidence is the September Article pleaded in paragraph 60.

60. **Continued Pursuit of the Same Family with the Same Technique.** On September 17, 2026, Defendants, again through Defendant Shirazi, published a second article concerning the Secretary's private household, under the headline "Trump's DHS Secretary Markwayne Mullin shares Washington 'crash pad' with best friend congressman in unusual arrangement: 'It's strange'" (the **"September Article"**). The September Article again relied on anonymous "sources close to" the Secretary; again described the Secretary as "married" while placing his private domestic arrangements under a headline characterizing them as "strange" and "unusual"; and again was constructed so that its insinuation about the Secretary's marriage and household was carried by juxtaposition and characterization rather than by any stated fact. The September Article also again named Plaintiff, reporting that "Mullin's wife Christie spends most of her time back home in Oklahoma," and again identified each of the Mullins' six children by name, even though Plaintiff's pre-suit demand pleaded in paragraph 64 had expressly demanded that Defendants remove the children's names and photographs and commit in writing not to republish them in any future publication. Within days, third-party outlets republished the September Article with the insinuation made explicit. The September Article is pleaded not as an

independent claim but as evidence that Defendants' treatment of Plaintiff's family in the Article was not an isolated lapse but a deliberate editorial method: anonymous "insider" sourcing, a headline that characterizes rather than reports, and the Secretary's marriage to Plaintiff used as the vehicle for the story's implication. The headline and byline of the September Article are reproduced below as Figure 5.



M+ EXCLUSIVE Trump's DHS Secretary Markwayne Mullin shares Washington 'crash pad' with best friend congressman in unusual arrangement: 'It's strange'

- Sign up HERE for the DC Insider Newsletter - our guide to what's rocking Washington, rattling the White House and setting tongues wagging on the Hill

By ELINA SHIRAZI, US SENIOR POLITICAL REPORTER
PUBLISHED: 15:05 EDT, 17 September 2026 | UPDATED: 16:44 EDT, 29 September 2026

Share | Add us as a preferred source | 54 comments

Figure 5. True and correct screen capture of the headline and byline of the September Article as displayed on the Daily Mail's website at www.dailymail.com/news/article-16136275/trump-markwayne-mullin-jason-smith-crash-pad.html, captured on October 10, 2026 (byline reading "Published: 15:05 EDT, 17 September 2026 | Updated: 16:44 EDT, 29 September 2026"). The capture ends above the subscription prompt that the website displays over the body of the September Article.

61. **Use of a Private Citizen Without Inquiry.** Defendants placed Plaintiff's name, age, photograph, and family details at the center of an unverified, anonymously sourced narrative without ever seeking comment from her or her representatives. The complete absence of any inquiry to the named and pictured private-citizen subject of an inflammatory accusation is itself evidence of reckless disregard for the truth.

62. **Naming and Picturing the Minor Children After the Denial.** After being told the story was false, Defendants nonetheless named and pictured the Mullins' minor children. The decision to expose innocent children to public humiliation in service of a story Defendants had been told was false reflects a reckless, and indeed knowing, disregard for the truth and for the harm publication would cause.

63. **Continued Publication After Written Notice of Falsity.** By letter dated May 28, 2026, Plaintiff's counsel formally notified Defendants of the falsity of each False Statement and demanded retraction. Defendants' continued publication after receipt of that demand is independent evidence of actual malice.

64. **Pre-Suit Demand and Refusal.** On June 29, 2026, Plaintiff's counsel transmitted to Defendants a formal pre-suit demand for retraction, correction, and apology, which was delivered on June 30, 2026, and which identified each False Statement and cited the public records refuting it. By letter dated July 8, 2026, through in house counsel, the Daily Mail refused to retract, correct, or apologize.

65. **Post-Demand Revision Without Correction.** The Article's published byline discloses that Defendants revised the Article on July 2, 2026, at 11:07 EDT, after receiving the demand, and revised it again on September 17, 2026, at 12:33 EDT, the same day Defendants published the September Article. Defendants published no correction, retraction, or editor's note. As of October 10, 2026, the Article remains published, bearing the same headline, the same accusations concerning a Special Government Employee designation for Plaintiff, and the names and photographs of Plaintiff's minor children.

66. **Denials Published Within the Article Itself.** As now published, the Article contains official denials of its own premises, including statements attributed to a DHS

spokesperson that the Secretary would "always pay for his wife's travel on the plane" and that he "abides by all ethics requirements," and an on the record statement of White House Border Czar Tom Homan. Defendants continue to publish the Article's accusations alongside these denials without correction.

67. **Selective Publication of Denials.** The denials Defendants chose to print are confined to the ethics and payment questions surrounding the Secretary's travel: that he would "always pay for his wife's travel on the plane" and that he "abides by all ethics requirements." Defendants printed no denial of the accusation that actually concerns Plaintiff, namely that the Secretary is "desperately trying" to place her on the DHS payroll and "pitches the idea on the regular," even though the Secretary and his staff had denied that accusation to Defendants, without qualification, before publication. Defendants thus absorbed the denials that cost the story nothing and withheld the denial that would have ended it. The selective inclusion of denials on peripheral points, and the omission of the denial on the central one, left reasonable readers to conclude that the SGE recruitment accusation stood unrebutted. That editorial selection is itself an affirmative act by which Defendants intended, or at a minimum endorsed, the Article's defamatory implication concerning Plaintiff.

68. **Post-Demand Revision and Version History.** The complete version history of the Article resides in Defendants' content management systems, preservation of which has been demanded. To the extent any revision altered or removed challenged language without correction, each revised version republished the Article's defamatory substance and constitutes an independently actionable publication.

69. **Inference of Knowledge of Falsity and Reckless Disregard.** Defendants' refusal to retract after specific written notice, their undisclosed revision of the Article, and their

continued publication of the Article's accusations alongside official denials that Defendants themselves chose to print, individually and collectively evidence knowledge of falsity and reckless disregard of the truth.

## XI. NEGLIGENCE

70. A publisher owes a duty of ordinary care before publishing an accusation that a private citizen is complicit in a scheme to defraud the public. That duty includes the duty to investigate the accusation, to seek comment from the accused, to consult readily available public records, and to refrain from publishing uncorroborated accusations drawn from biased anonymous sources.

71. Defendants breached that duty in every respect. They relied on anonymous "furious staff" sources without corroboration. They consulted none of the readily available public records that would have disproved the story. They never contacted Plaintiff, the named and pictured subject of the accusation. And although they asked the Secretary and his staff and were told the story was false, they published it anyway, even as a responsible competitor presented with the same denial declined to publish.

72. Had Defendants exercised ordinary care, they would have learned that Plaintiff never sought or was offered any DHS position, that no scheme to misuse federal aviation resources existed, that the Mullins own their own aircraft and need no federal designation to fly privately, and that the Presidential Required Use determination foreclosed the cost-avoidance premise on which the Article depends. Exercising ordinary care, Defendants would not have published the False Statements.

73. As a direct and proximate result of Defendants' failure to exercise ordinary care, Plaintiff has suffered the specific consequences described in this Complaint, including the public

humiliation of her family, her children's resulting embarrassment and reluctance to attend school, the verbal abuse directed at her sixteen-year-old daughter at school, and Plaintiff's own severe emotional distress, reputational harm, and impairment of her uncompensated volunteer service.

## XII. HARM AND DAMAGES

74. As a direct and proximate result of Defendants' false and defamatory statements, Plaintiff has suffered severe and ongoing harm to her reputation, personal honor, dignity, professional standing within her volunteer charitable community, family relationships, and emotional well-being.

75. The harm to Plaintiff is not abstract. Because the Article named and pictured the Mullin children, the false accusation against their mother followed them to school. The children are embarrassed to attend school, and one of the Mullins' sixteen-year-old daughters was told by a fellow student, "you should just go kill yourself." Plaintiff has endured the distinct anguish of watching her children be humiliated and abused in public because of a falsehood about her, a falsehood Defendants were told was false before they published it.

76. Because each False Statement is libel per se, Plaintiff is entitled to presumed damages without specific proof, to the full extent the law permits, including upon the showing of actual malice pleaded in Counts II and III.

77. Plaintiff has additionally suffered ascertainable special damages, including loss of standing within her charitable and volunteer community, substantial emotional distress, embarrassment, and humiliation to Plaintiff and her family, impairment of her ability to continue her uncompensated volunteer service at the America First Policy Institute, and increased expense and effort in counteracting the false narrative.

## COUNT I. DEFAMATION (LIBEL PER SE, PRIVATE-CITIZEN NEGLIGENCE STANDARD)

78. Plaintiff repeats and incorporates by reference paragraphs 14 through 50 and 70 through 77, which set forth the facts on which this Count principally rests, and the remaining factual allegations of paragraphs 1 through 77 to the extent not inconsistent with this Count, as though fully set forth herein.

79. Defendants made, published, and distributed each of the False Statements identified above, in the Article and again in the Gallery Republication. Defendant Shirazi republished the substance of False Statement No. 2 in the X Post. Each publication was made to third parties, including readers of dailymail.co.uk, dailymail.com, mailonline.com, and Microsoft's MSN news service, in the District of Columbia and throughout the United States, as set forth in paragraphs 22 through 30.

80. Each False Statement is of and concerning Plaintiff. The Article and the Gallery Republication identify Plaintiff by name, age, and photograph, and reasonable readers understood the False Statements to refer to her, as set forth in paragraphs 24, 27, and 39 through 42.

81. Each False Statement is false, as set forth in paragraphs 15, 31, 33 through 38, and 43 through 45.

82. Defendants' publication of the False Statements was not privileged. The False Statements report no official proceeding, government record, or official action, and Defendants published them to a national audience after being told they were false, as set forth in paragraphs 31, 32, and 46 through 49.

83. Plaintiff is a private citizen, as set forth in paragraphs 14, 15, and 19 through 21. Defendants published each False Statement negligently, without exercising the care that a

reasonable publisher would have exercised under the circumstances, as set forth in paragraphs 46 through 49 and 70 through 73.

84. Each False Statement is defamatory per se because it imputes to Plaintiff dishonesty and complicity in a scheme to misuse public resources and to defraud the public, and it tends to injure her in her reputation and standing in the community, as set forth in paragraph 50.

85. As a direct and proximate result of Defendants' publication of the False Statements, Plaintiff has suffered actual injury, including impairment of her reputation and standing in her community, personal humiliation, and mental anguish and suffering, as set forth in paragraphs 73 through 75, together with the special damages set forth in paragraph 77.

**WHEREFORE**, Plaintiff Christie Mullin demands judgment against Defendants, jointly and severally, for compensatory damages and special damages in amounts to be determined at trial, together with prejudgment and post-judgment interest, costs, and such other relief as the Court deems just.

## COUNT II. DEFAMATION (LIBEL PER SE, ACTUAL MALICE STANDARD, IN THE ALTERNATIVE)

86. Plaintiff repeats and incorporates by reference paragraphs 14 through 69 and 74 through 77, which set forth the facts on which this Count principally rests, and the remaining factual allegations of paragraphs 1 through 77 to the extent not inconsistent with this Count, as though fully set forth herein.

87. Defendants published each False Statement, in the Article and again in the Gallery Republication, to third parties, including readers in the District of Columbia and throughout the United States, as set forth in paragraphs 22 through 30. Defendant Shirazi republished the substance of False Statement No. 2 in the X Post.

88. Each False Statement is of and concerning Plaintiff, as set forth in paragraphs 24, 27, and 39 through 42.

89. Each False Statement is false, as set forth in paragraphs 15, 31, 33 through 38, and 43 through 45.

90. Defendants' publication of the False Statements was not privileged, as set forth in paragraphs 31 and 32.

91. Each False Statement is defamatory per se because it imputes to Plaintiff dishonesty and complicity in a scheme to misuse public resources and to defraud the public, as set forth in paragraph 50.

92. In the alternative to Count I, and without conceding that she is anything other than a private citizen as set forth in paragraphs 14 and 19 through 21, Plaintiff pleads that Defendants published each False Statement with actual malice, that is, with knowledge that it was false or with reckless disregard of whether it was false, as set forth in paragraphs 46 through 49 and 51 through 69, including their publication of the Article after the Secretary and his staff expressly denied the story and after a responsible competitor, presented with the same denial, declined to publish it.

93. Defendants in fact entertained serious doubts as to the truth of the False Statements. They had been told by the persons in the best position to know that the story was false; they relied on anonymous sources they themselves described as "furious staff"; they never sought comment from Plaintiff; they labeled the accusation a "rumor" in the headline while asserting it as fact in the text and in the X Post; and they continued to publish the False Statements after written notice of their falsity, as set forth in paragraphs 52 through 58, 61, and 63 through 69. Defendants' decision to forgo each readily available means of verification,

including Plaintiff herself and the public records described in paragraph 56, reflects a purposeful avoidance of the truth. Each of the July 2, 2026 and September 17, 2026 revisions was made after Defendants had received written notice of the falsity of the False Statements.

94. As a direct and proximate result, Plaintiff has suffered the actual injury and special damages set forth in paragraphs 74 through 77. Because Defendants published the False Statements with actual malice, Plaintiff is entitled to presumed damages without proof of actual injury, as set forth in paragraph 76.

95. Defendants' conduct was willful, wanton, and in conscious and reckless disregard of Plaintiff's rights. Defendants named and pictured Plaintiff's minor children after being told the story was false; after written notice that the False Statements were false, they refused to retract them and revised the Article without correction; and, in the September Article, they again named Plaintiff and her minor children after Plaintiff had demanded in writing that they stop, as set forth in paragraphs 60 and 62 through 65. Plaintiff is entitled to punitive damages.

**WHEREFORE**, in the alternative, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages, presumed damages, special damages, and punitive damages in amounts to be determined at trial, together with prejudgment and post-judgment interest, costs, and such other relief as the Court deems just.

## COUNT III. DEFAMATION BY IMPLICATION

96. Plaintiff repeats and incorporates by reference paragraphs 14 through 77, which set forth the facts on which this Count principally rests, and the remaining factual allegations of paragraphs 1 through 77 to the extent not inconsistent with this Count, as though fully set forth herein.

97. Independent of the literal falsity of the False Statements, the Article conveyed to reasonable readers a false and defamatory implication about Plaintiff: that she is complicit in, and the willing beneficiary of, a scheme to misuse federal resources and to defraud the public. The Article conveyed that implication through the affirmative choices of its authors and editors, including the juxtaposition of the alleged scheme with Plaintiff's name, age, and photograph; the selective presentation and emphasis of unverified assertions; and the all-capital "WIFE" headline that placed Plaintiff at the center of the narrative. Those affirmative choices are set forth in paragraphs 20, 24, 39, and 47.

98. Defendants, through their own affirmative acts, including the juxtaposition of statements, the creation of a false innuendo, and the selective inclusion and omission of facts, conveyed a false and defamatory inference concerning Plaintiff. The language of the Article can reasonably be read to impart that false innuendo, and it affirmatively suggests that Defendants intended or endorsed the inference.

99. Defendants intended and endorsed the defamatory implication. The all-capital "WIFE" headline, the deliberate placement of Plaintiff at the center of an alleged corruption scheme, the inclusion of her name, age, and photograph, and Defendants' decision to publish after the Secretary and his staff expressly denied the story, demonstrate that Defendants intended, or at a minimum endorsed and adopted, the false implication that Plaintiff was a knowing participant in wrongdoing. Three further affirmative choices confirm that intent. First, Defendants framed as a "rumor" about Plaintiff a story whose content is an accusation of her husband's own deliberate conduct, so that the accusation would attach to Plaintiff in the headline while Defendants disclaimed responsibility for asserting it, as set out in paragraphs 40 through 42. Second, Defendants selected for publication the official denials that addressed peripheral

ethics and payment questions and omitted the denial of the SGE recruitment accusation itself, leaving the accusation concerning Plaintiff to stand unrebutted, as set out in paragraph 67. Third, the September Article, pleaded in paragraph 60 only as later evidence of the same editorial method and not as an independent claim or as an act in the May 27, 2026 publication, is further evidence of that method. The selective inclusion and omission of facts, and the framing of a factual charge as a rumor about the Secretary's wife, are precisely the affirmative acts by which a publisher endorses a defamatory inference.

100. That the Article in fact conveyed, and was understood by reasonable readers to convey, this defamatory implication concerning Plaintiff is confirmed by the public response to it. In the comment thread published beneath the Article, readers understood the Article to charge Plaintiff with seeking a government position for which she was unqualified in order to draw on public funds. One commenter wrote: "What experience does his wife ha[ve] to warrant being hired... another unqualified person taking advantage of taxpayer money" (commenter "**Babysinclair501**"). Another wrote: "Let [the Secretary] pay for her ticket. She does not need to be put on the government payroll" (commenter "**Vegas fun**"). Another characterized the couple as "[g]rifters [who] keep on grifting" (commenter "**SoundWoolenBun**"). These reactions confirm that reasonable readers drew, from Defendants' affirmative framing, the very inference Defendants intended or endorsed: that Plaintiff was a knowing participant in, and beneficiary of, a scheme to misuse public resources. Replies to Defendant Shirazi's X Post, pleaded in paragraphs 29 and 30, are to the same effect.

101. The defamatory implication is false. Plaintiff has never sought, considered, applied for, or accepted any DHS position, and she has played no role in any scheme to misuse federal resources. The implication charges Plaintiff with serious ethical and moral impropriety

and is defamatory per se. The facts establishing its falsity are set forth in paragraphs 15, 33 through 38, and 43 through 45.

102. Defendants published the Article and the Gallery Republication, and with them the defamatory implication, to third parties, as set forth in paragraphs 22 through 30. The implication is of and concerning Plaintiff, as set forth in paragraphs 24, 27, and 39 through 42. Its publication was not privileged, as set forth in paragraphs 31 and 32.

103. Defendants published the defamatory implication with at least negligence, as set forth in paragraphs 46 through 49 and 70 through 73. In the alternative, Defendants published it with actual malice. Before publication, the Secretary and his staff told Defendants that the story was false, so that Defendants knew, or recklessly disregarded, that the inference they conveyed concerning Plaintiff was false, as set forth in paragraphs 46 through 49 and 51 through 69.

104. As a direct and proximate result, Plaintiff has suffered the actual injury and special damages set forth in paragraphs 74 through 77. Because Defendants acted with actual malice and in willful and wanton disregard of Plaintiff's rights, as set forth in paragraphs 60 and 62 through 65, Plaintiff is also entitled to presumed and punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages, presumed damages, special damages, and punitive damages in amounts to be determined at trial, together with prejudgment and post-judgment interest, costs, and such other relief as the Court deems just.

## COUNT IV. FALSE LIGHT INVASION OF PRIVACY

105. Plaintiff repeats and incorporates by reference paragraphs 14 through 49, 51 through 69, and 74 through 77, which set forth the facts on which this Count principally rests, and

the remaining factual allegations of paragraphs 1 through 77 to the extent not inconsistent with this Count, as though fully set forth herein.

106. Defendants gave publicity to matters concerning Plaintiff that placed her before the public in a false light, portraying her as the acquiescent intended beneficiary of an alleged corrupt scheme.

107. Defendants gave that matter publicity to the public at large. They published it on dailymail.co.uk, dailymail.com, mailonline.com, and Microsoft's MSN news service, promoted it on social media, and, through the X Post, which X reported had been viewed 433,439 times as of October 10, 2026, directed a large audience to it, as set forth in paragraphs 22 through 30.

108. The publicized matter concerns Plaintiff. Defendants identified her by name, age, and photograph and placed her at the center of the Article's narrative, as set forth in paragraphs 24, 27, and 39 through 42.

109. The portrayal is false. Plaintiff has never sought, considered, applied for, been offered, or accepted any DHS position, has had no role in any arrangement to misuse federal resources, and is not the beneficiary of any such arrangement, as set forth in paragraphs 15, 33 through 38, and 43 through 45.

110. The false light in which Plaintiff has been placed is highly offensive to a reasonable person. A reasonable person would find it highly offensive to be portrayed to a national audience, by name and photograph and alongside her minor children, as the willing beneficiary of a scheme to misuse public resources, as set forth in paragraphs 20, 47, 62, and 75.

111. The offensive character of that false portrayal is reflected in the public commentary the Article provoked, in which readers subjected Plaintiff, a private citizen, to demeaning and sexualized ridicule. Representative of that reaction is a comment that Plaintiff was

"not all that anyway" (commenter "**JesterFowlPulsar**"), among other public remarks degrading Plaintiff on the basis of the scandalous portrayal the Article manufactured.

112. Defendants had knowledge of, or acted in reckless disregard as to, the falsity of the publicized matter and the false light in which Plaintiff would be placed, having been told before publication that the story was false, as set forth in paragraphs 46 through 49 and 51 through 69.

113. As a direct and proximate result, Plaintiff has suffered injury to her reputation, emotional distress, humiliation, and embarrassment, as set forth in paragraphs 74 and 75, together with the special damages set forth in paragraph 77. Because Defendants acted with knowledge of falsity or reckless disregard, and in willful and wanton disregard of Plaintiff's rights, as set forth in paragraphs 60 and 62 through 65, Plaintiff is entitled to punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages, special damages, and punitive damages in amounts to be determined at trial, together with prejudgment and post-judgment interest, costs, and such other relief as the Court deems just.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Christie Mullin respectfully prays for judgment against Defendants Associated Newspapers Limited, Mail Media, Inc., and Elina Shirazi, jointly and severally, as follows:

A. Compensatory and presumed damages, including damages for reputational harm, professional and volunteer-community harm, emotional distress, humiliation, and embarrassment, in an amount to be determined at trial;

B. Special damages in an amount to be determined at trial;

C. Punitive damages in an amount to be determined at trial, sufficient to deter Defendants and others similarly situated from publishing similar defamatory falsehoods;

D. Prejudgment and post-judgment interest as permitted by law;

E. Costs of suit; and

F. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

Dated: October 15, 2026

*/s/ C. Todd Marks*
**Christopher Todd Marks, Esq.** (D.C. Bar No. 478631)
WESTCHASE LAW, P.A.
12027 Whitmarsh Lane, Tampa, FL 33626
Telephone: (813) 490-5211
Email: todd@westchaselaw.com; Service@WestchaseLaw.com
*Counsel of Record for Plaintiff Christie Mullin*

*/s/ Natalie Khawam Case*
**Natalie Khawam Case, Esq.** (Florida Bar No. 27997)
Natalie Khawam Case & Associates, PLLC
601 Pennsylvania Ave NW Ste 900, Washington, DC 20004
Telephone: (813) 625-2820
*Pro Hac Vice Motion Pending*
*Co-Counsel for Plaintiff Christie Mullin*